Columbia, November, 1875.

HEARD NOVEMBER TERM, 1875.

## STATE *vs.* COLEMAN.

A prisoner under indictment for murder cannot, as a matter of right, demand that the venue shall be changed to a County not within the Circuit in which the indictment was found. To what County the venue shall be changed is a matter of discretion with the Circuit Judge.

The right of a prisoner to examine jurors upon their *voir dire* cannot be exercised without restraint either as to time or mode.

Where a prisoner has challenged a juror peremptorily he cannot afterwards have him recalled in order to object to him for cause.

Where it becomes known, after the jury has been empaneled, that one of the jurors had expressed an opinion in relation to the case, it is no ground for a new trial that the presiding Judge did not, of his own motion, dismiss the juror, the prisoner's counsel having declined to make a motion to that end.

That the name of the Solicitor to the bill of indictment was not signed by him is no ground for a motion in arrest of judgment.

Even assuming the law to be (and there is doubt upon the point) that the signature of the Solicitor is necessary to make the indictment valid, still it is enough if his name, with his official character, is subscribed to the bill with his sanction.

Where additional jurors are wanted, and they have been selected as directed by the Act of November 19, 1873, it is not an irregularity to summon them by a *venire*, and not by the Sheriff, under a mere verbal-direction of the Judge.

No irregularity in any writ of *venire facias*, or in the drawing, summoning, returning or empaneling of the jurors, is sufficient to annul the verdict, where the objections were not made before the verdict was returned, or where the party making the objection was not injured by the irregularity.

It is no ground for a motion in arrest of judgment in an indictment for murder that the indictment charged the offense to have been committed "against the *statue* in such case made and provided."

The statute declaring the definition of murder, as understood at common law, and the punishment which follows its commission, does not change it from a common law to a statutory offense.

An indictment for the murder of "A B" alleged that J C, the prisoner, "on the 13th day of April, in the year of our Lord one thousand *eigh* hundred and seventy-three," at, &c., in and upon the said "A B" did make an assault, and him, the said "A B," then and there, with a certain large stick, did strike, giving him one mortal wound, of which the said "A B" "from the said 13th day of April, in the year of our Lord 1873, until the 14th day of the same month of April, in the year of our Lord *last* aforesaid, did languish," "on which said 14th day of April, in the year aforesaid, the said 'A B' at, &c., aforesaid, died:" *Held*, That the use of the letters *eigh*, in place of the word eight, and the omission of the word *last*, between the words "year" and "aforesaid" in the last averment of time, did not render the allegations of time uncertain, and was no ground for arresting the judgment.

## BEFORE COOKE, J., AT ABBEVILLE, OCTOBER, 1875.

This was an indictment against Jerry Coleman for the murder of Adam Hacket.

The case had been tried before, and, upon an appeal by the prisoner, a new trial had been ordered.

The only statement of the case made at this, the second trial, which the Reporter has been able to obtain is that contained in the opinion of the Court.

The prisoner was convicted and appealed to this Court.

*Thomson & Noble*, for appellant.

*Blythe*, Solicitor, contra.

March 1, 1876.   The opinion of the Court was delivered by

Moses, C. J.   The commendable zeal of the counsel for the appellant, and a knowledge of the laudable motive which prompted him to undertake the defense of the prisoner, whose interests are so deeply involved, have induced us to give a longer consideration of the points made on the motion before us than their merits demanded.

The first ground for a new trial assigned error on the part of the presiding Judge in not granting the motion for a change of venue to some County without the Eighth Circuit.   The statute in regard to a change of venue allows the presiding Judge the exercise of his discretion in granting a motion to that end.   While here, upon very general affidavits as to the improbability of a fair and impartial trial in the County in which the bill was found, the Judge expressed his willingness to transfer the case for trial to any County in the circuit except Pickens, where there would be no Court at the term next fixed by law.   The prisoner refused to avail himself of the indulgence thus proffered and insisted that the change should be to a County out of the circuit.   The refusal on the part of the Judge has not been shown to be an improper exercise of the discretion confided to him by the statute.   In the absence of all proof to the contrary, we must assume that his course was prompted by a due regard to the rights both of the prisoner and the State.   It is not a privilege conferred by the Act on a party, plaintiff or defendant, and neither can claim the benefit of the provision unless he shows that he is properly entitled to it.   It was never intended to give one the selection of the County to which the case may be transferred, for this would make the order depend, not on the discretion of the Court, but the will of the party submitting the motion, and would be subversive of the very end which the Legislature designed in the enactment.

We cannot perceive in what manner the right of examination of the proposed jurors on their *voir dire* was violated, or its exercise even abridged, as is claimed by the second ground on which a new

trial is asked. On the contrary, a latitude was allowed much beyond what could be demanded either from the spirit or letter of the statute. In this particular the prisoner has certainly nothing to complain of. The right allowed to one in his condition of the examination of the juror is not to be exercised without restraint, either as to time or mode. If so, it might be prolonged to defeat a trial by the expiration of the term, and thus compel a continuance which would not be granted on a direct motion. In fact, the allowance of the examination by the counsel in the place of the Court was an indulgence. The presiding Judge must determine on the character of the questions proposed and when the examination shall cease. The questions must be pertinent, and from their nature calculated to show that the person offered is not so free from bias as to sit as an impartial juror.

We see nothing sufficient even for a doubt that the right of the prisoner to a peremptory challenge of twenty jurors was in any way infringed. Derry Watt, when called, was objected to and sat aside. No evidence, discovered on the next day, to show that he might have been challenged for cause can give the prisoner the right to have him again presented to be objected to for cause, and his number of peremptory challenges, twenty, extended to twenty-one. We do not think that any precedent can be found to sustain so anomalous a proceeding. As was said by the Court in the *State* vs. *Wise & Johnson*, (7 Rich., 416,) "the right to challenge does not draw after it the right of selection, but merely the right of exclusion."

The objection that the presiding Judge did not of his own motion dismiss Collier Ward from the jury after it had been empaneled is not well founded. Even assuming the fact, which does not in any manner appear, that he had expressed an opinion in regard to the case, and knowledge of it had only come to the prisoner after the jury was formed, when the counsel refused to move for his removal, and the substitution of another in his place, it would have been an arbitrary and unjust exercise of power on the part of the Court to displace a juror whom the prisoner had not challenged. The Judge went very far in deference to the counsel when he said he would allow the said juror to be withdrawn if he would make the motion. The counsel declined, and cannot ask us to do for him here what he declined from accepting of the Court below, merely because he would not move for it.

The error assigned in not allowing Henry Callahan, or Calhoun, a juror presented, to answer the questions proposed, to wit: "If he had ever heard any one express an opinion as to the guilt of the prisoner, and, if so, when," seems to proceed upon a mistake of the fact in the matter to which it relates. The Judge in his report expressly states that, although he did sustain an exception to the question, he afterwards announced to the counsel of the prisoner "that he might ask any question he wished." Nay, he goes farther and says "that, in every instance in which he desired it, he ordered the juryman to stand aside." After an extension of such liberality, can the prisoner, with any grace, urge that his right of challenge was in any manner prejudiced by the Court?

Failing in the motion for a new trial, an arrest of judgment is asked on various grounds, which will be noticed in the order in which they appear in the brief.

It is first objected that the name of the Solicitor to the indictment is not signed by himself. This was not made to appear by any proof. Assuming the fact as alleged, it cannot affect the indictment. It is even doubtful that his signature is necessary; and in Arkansas, Indiana, Alabama and Missouri, it has been expressly decided that an indictment need not be signed.—See Wharton's Am. Crim. Law, § 474. While the better practice doubtless is for the prosecuting officer to affix his signature, the want of it certainly cannot so affect the bill presented by him to the grand jury, and by it returned "true," as to render it void. (Here, too, the name of the Solicitor, with his official character, was subscribed to the bill, and if he adopted the signature as authorized by him, and made with his sanction, we cannot appreciate the argument which, under the circumstances, seeks to vitiate the indictment.

That the Court had the right to amend the caption of the indictment has been too long the recognized practice and rule in this State to be now questioned.—*State* vs. *Williams*, 2 McC., 301; *Vandyke* vs. *Dare*, 1 Bail., 65. In the first, after conviction, leave was granted by the Constitutional Court, although one of the very points on which the prisoner had appealed from the judgment of the Circuit Court was the insufficiency of the caption of the indictment under which he had been convicted. In fact, the caption forms no part of the indictment.—Wharton's Am. Crim. Law, §§ 219, 220.

The ground in arrest of judgment which questions the mode that was resorted to for the purpose of procuring additional persons to

serve as jurymen is not well taken. The Act of November 19, 1873, (15 Statutes at Large, 485,) amending the 24th Section of Chapter CXI of General Statutes, provides that "whenever it may be necessary to summon jurors from the bystanders the Sheriff and Clerk shall each furnish to the presiding Judge a list containing as many names as there are jurors required of persons duly qualified to serve as jurors, and the presiding Judge shall select therefrom those best fitted to serve as jurors, who shall forthwith be summoned by the Sheriff to serve until discharged by order of the Court." The objection is not to the mode in which the names were presented, but to the fact that the persons selected were summoned by a *venire*. It is claimed that they should have been summoned by the Sheriff by the mere verbal direction of the Judge. Is the performance of an official act to be questioned because it has been through a more formal manner than the law required? Is the notice less effective, or the duty of the citizen to obey less imperative, because the order is through a *venire* under the seal of the Court instead of a mere verbal or written order of the Judge? The complaint amounts to this: that the Court erred in resorting to that mode of securing the presence of the jurors which was the most formal and certainly the most efficacious. But if it were well founded, it is made too late. Exception should have been taken when the first juror so summoned was presented. The twenty-ninth Section of the Chapter of the General Statutes, already referred to declares "that no irregularity in any writ of *venire facias*, or in the drawings, summoning, returning or empaneling of jurors, shall be sufficient to set aside the verdict unless the party making the objection was injured by the irregularity, or unless the objection was made before the returning of the verdict."

Nor is there any better foundation for the ground which assumes error in the indictment in charging the offense "against the *statue* in such case made and provided." That *statue* was used instead of *statute* cannot avail the prisoner. A conclusion against the statute in an indictment for a common law offense is mere surplusage and should be disregarded. It is claimed, however, by the counsel for the prisoner that murder is now in this State a statutory offense. How this conclusion was reached we were not favored by any argument on the hearing. The General Statutes merely declare the definition of murder as understood at common law and the punishment which follows its commission. It in no way affects the ingre-

dients which are necessary to constitute it—in no way alters or changes the forms for its trial, but leaves it exactly and in every particular as it stood at common law. "Where the common law and statutes differ, the common law gives place to the statute."— 1 Black., 89. But here the statute is in no particular repugnant to the common law.

It remains only to consider so much of the motion as refers to alleged insufficiencies in the indictment. That greater nicety of pleading is required in criminal than civil cases must be admitted. In strict submission to the common law, its exacting demand is conceded even at this day by the Courts, notwithstanding the affirmation of many of the most eminent of the English Judges "that the grossest crimes have gone unpunished by reason of these unseemly niceties." "An indictment ought to be certain to every intent and without any intendment to the contrary."—1 Chit. Cr. Law, 172.

It is also laid down that every indictment must charge the crime with such certainty of expression that it may be understood by every one, alleging all the requisites that constitute the offense; and that every averment must be so stated that the party accused may know the general nature of the crime of which he is accused, and who the accusers are, when he will be called upon to answer.—*Ibid.*

The indictment charges that Jerry Coleman, late of, &c., on the 13th day of April, in the year of our Lord one thousand *eigh* hundred and seventy-three, at Abbeville C. H., &c., with force and arms, &c., in and upon one Adam Hackett, in the peace of, &c., then and there being, feloniously, willfully, &c., did make an assault; and that he, the said Jerry Coleman, then and there, with a certain large stick, &c., the said Adam Hackett in and upon, &c., did strike, &c., giving unto him, &c., one mortal wound, of which he, the said Adam Hackett, from the said 13th day of April, in the year of our Lord 1873, until the 14th day of the same month of April, in the year of our Lord *last* aforesaid, did languish, &c., on which said 14th day of April, in the year aforesaid, the said Adam Hackett, at Abbeville C. H., aforesaid, died. And so the jury as aforesaid, &c.

The indictment is charged as defective, because it does not allege that the prisoner committed the offense on a specific day. That certain combination of letters forming the syllable *eigh*, unmeaning in itself, is set forth as the allegation of the time when the offense

is charged, and that to every triable fact time should be repeated. Mr. Chitty, on page 173 of his first volume of Criminal Law, says: "If the sense be clear, nice distinctions ought not to be regarded."

Time and place must accompany every material allegation in the indictment, though it is not necessary in all cases to prove the offense on the day laid if it is before bill found. If, however, taking the indictment as a whole, a day is specified as to any issuable averment, the objection will not be fatal because the day is not repeated with every issuable fact. Admitting that the letters *eigh* make no word significant of time, if there was nothing else in the indictment by which a time was found to be specified by proper expression the exception should prevail. If there is, however, enough in the indictment to notify the prisoner of the time when the offense is laid, no advantage can be taken of "clerical or grammatical errors which do not obscure the meaning."—See *State* vs. *Wimberly*, 3 McC, 190. The time in the indictment before us is made manifest and put beyond doubt, notwithstanding the employment of the letters "*eigh*," in setting out the day of the month and year on which the assault was made, by the after reference to it as "the *said* thirteenth day of April, in the year of our Lord one thousand eight hundred and seventy-three," referring to it as the time when the mortal blow was inflicted.

It is further urged "that the omission of the word *last*, between the words year and aforesaid, in the last averment of time in the indictment, renders the allegation of time uncertain and is fatal." In regard to this, it is enough to say "that the word 'aforesaid' in general refers to the last antecedent."—1 Chit. Cr. Law, 173.

The motion for a new trial as well as that in arrest of judgment are dismissed.

*Willard*, A. J., and *Wright*, A. J., concurred.